# In the United States Court of Federal Claims

No. 14-251 C

(Filed June 10, 2016)

**UNPUBLISHED**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | |
|---|---|
| BISHOP HILL ENERGY LLC and | \* |
| INVENERGY WIND LLC, | \* |
| | \* |
| *Plaintiffs*, | \* RCFC 15(a)(2); Amendment of |
| | \* Answer Not Futile; |
| v. | \* Plausible Counterclaim. |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| *Defendant*. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*John C. Hayes, Jr.*, Washington, DC, for plaintiffs. *Alycia A. Ziarno*, *Brian P. Donnelly* and *Brian J. Whittaker*, Washington, DC, of counsel.

*Miranda Bureau*, United States Department of Justice Tax Division, with whom were *Caroline D. Ciraolo*, Acting Assistant Attorney General, *David I. Pincus*, Chief, *G. Robson Stewart*, Assistant Chief, *S. Starling Marshall* and *Blaine G. Saito*, Trial Attorneys, Washington, DC, for defendant.

———————————————

**OPINION**

———————————————

**Bush**, *Senior Judge*.

The court has before it Defendant's Motion for Leave to Amend Answer to

Bring Counterclaim, filed April 5, 2016.  The motion is opposed by plaintiffs[1] and has been fully briefed.  Plaintiffs argue that defendant's proposed counterclaim fails to state a claim upon which relief can be granted.  In plaintiffs' view, therefore, the proposed amendment of the government's answer is futile and defendant's motion should be denied.  Because plaintiffs' futility argument is not persuasive, the government's motion must be granted.

## I.    Standard of Review

Defendant's motion is brought under Rule 15(a)(2) of the Rules of the United States Court of Federal Claims (RCFC).  The rule states that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  *Id.* Leave to amend a pleading should not be granted, however, when the proposed amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The appropriate test for futility here is whether the proposed counterclaim fails to state a claim upon which relief can be granted, under the plausibility test delineated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*Twombly*).  Pls.' Opp. at 3; Def.'s Reply at 3.

The United States Court of Appeals for the Federal Circuit invoked the *Twombly* plausibility standard, as applied to amended pleadings, in *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014).  After this court had denied motions to dismiss two similar suits asserting takings claims, the Federal Circuit affirmed the trial court and remanded the cases for further proceedings.  The Federal Circuit acknowledged that the plaintiffs' complaints, as filed, failed to state claims upon which relief could be granted.  *Id.* at 1158.  The "proper remedy," however, was not dismissal but for the trial court to grant the plaintiffs leave to amend their complaints to include some of the factual allegations they raised in the oral argument held by the Federal Circuit.  *Id.* at 1158-59.

The Federal Circuit noted that the amended complaints in *A & D Auto* would nonetheless be required to provide more explicit factual allegations than "conclusory loss of value allegations" in order to adequately support the plaintiffs'

---

[1]/ This case was originally filed by a single plaintiff; a second plaintiff was added on December 8, 2015.  As a consequence, documents filed or served before that date reference "plaintiff," not "plaintiffs."

takings claims. 748 F.3d at 1159. In other words, the amended pleadings would be required to go beyond mere """"labels and conclusions,"""" or """"formulaic recitation of the elements of a cause of action."""" *Id.* (quoting *Twombly*, 550 U.S. at 555, as quoted in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*)). Thus, pursuant to *A & D Auto*, a proposed counterclaim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.   Analysis

The focus of plaintiffs' challenge to the government's amendment of its answer filed May 30, 2014 is that defendant's proposed counterclaim is futile. Pls.' Opp. at 3-7. Plaintiffs' futility argument has two prongs. The first states that the counterclaim proposed by the government is not plausible because its factual allegations contradict sworn statements from defendant obtained by plaintiffs during discovery. *Id.* at 4-5. The second futility prong asserts that the government's counterclaim, even if contradictory statements of fact are disregarded, cannot satisfy the plausibility standard set forth in *Twombly*. *Id.* at 5-7. The court addresses each of plaintiffs' futility arguments in turn.

### A.   Alleged Contradictions in Statements of Fact Presented by Defendant Do Not Render Its Counterclaim Implausible

The government, in its counterclaim, alleges that plaintiffs were overpaid $4,380,039 when they received their wind power development grant from the United States Department of the Treasury (Treasury), a grant which is also known as a "Section 1603" payment. Def.'s Mot. at 2; Proposed Counterclaim ¶ 27. Plaintiffs correctly point out that the government's explanation of the genesis of the overpayment amount has varied during this litigation. In discovery, the Section 1603 payment actually provided to plaintiffs was explained by the government in this manner:

> Defendant states that [plaintiff's Section 1603 payment] reflects Treasury's 1603 payment [based on a downward] adjustment for Plaintiff's application, which Treasury calculated based on a reduction of Plaintiff's claimed eligible basis by the amount of the development fee

> included in Plaintiff's total cost basis, and subsequent
> addition of a mark-up equal to five percent of Plaintiff's
> claimed qualified direct costs. This adjustment was
> made based on Treasury's conclusion that the dollar
> value of the development fee that Plaintiff allocated to
> claimed eligible basis was inconsistent with Treasury's
> belief as to the fair market value of such a development
> fee that is appropriately allocable to eligible basis.

Pls.' Opp. Ex. A at 3-4. In recent filings however, the government omits any mention of an excluded development fee,[2] a five percent mark-up, or fair market value, and instead states that plaintiffs' Section 1603 payment reflected a "reduced portion of the development fee," or a "reduced Development Fee." Def.'s Mot. at 2; Proposed Counterclaim ¶ 6. According to plaintiffs, these variations in the government's explanation of the amount of plaintiffs' Section 1603 payment destroy the plausibility of its overpayment counterclaim.

The alleged overpayment included within plaintiffs' Section 1603 payment from Treasury is perhaps better understood by considering the actual dollar amounts involved. The first important variable for Section 1603 payments is thirty percent, the percentage of a wind power facility's cost basis which can be recovered in a grant award from Treasury. Compl. ¶ 10. Another important figure is plaintiffs' statement of their facility's cost basis, at $433,077,031. *Id.* ¶ 16. Thirty percent of $433,077,031 equals $129,923,109, which is the amount plaintiffs sought from Treasury for their grant award. *Id.* ¶ 20.

Plaintiffs received a reduced Section 1603 payment from Treasury, however, in the amount of $117,216,098. Compl. ¶ 20. Plaintiff's claim in this suit, $12,707,011, is for the difference between the Section 1603 payment they sought, *i.e.*, $129,923,109, and the Section 1603 payment they received, *i.e.*, $117,216,098. *Id.* at 6. Defendant argues, and plaintiffs do not appear to dispute, that the reduction in plaintiffs' Section 1603 payment was attributable to Treasury's treatment of the $60,000,000 development fee included, at least in part, in plaintiffs' cost basis calculations. Def.'s Reply at 6 ("It is clear that Treasury's

---

[2]/ The development fee paid by plaintiffs was in the amount of $60,000,000. *See* Def.'s Br. of May 7, 2015, Ex. F at 2.

reduced Section 1603 payment was due to a reduction of the amount of the claimed Development Fee."); Pl.'s Disc. Mot. of Sept. 30, 2015, at 11 ("This is a case in which nearly $13 million is in controversy, all of which depends on the Court's determination as to the fair market value of Plaintiff's development fee."). Thus, plaintiffs seek in this suit to obtain approximately thirteen million dollars which they would have received if Treasury had accepted, without reduction, plaintiffs' $60,000,000 development fee as presented as an element of the facility's cost basis in their Section 1603 application.

Turning now to the government's counterclaim, defendant alleges that even the reduced cost basis of plaintiffs' facility, as determined by Treasury, was too high.  Proposed Counterclaim ¶¶ 6, 27.  According to the government, Treasury included an overpayment of $4,380,039 in plaintiffs' Section 1603 payment which was attributable to Treasury's treatment of plaintiffs' $60,000,000 development fee.  *Id*.  In other words, the government states that previously a portion of plaintiffs' cost basis was attributed by Treasury to the $60,000,000 development fee, but instead, *none* of the $60,000,000 development fee should have been included in the cost basis of plaintiffs' facility.

Defendant, in its reply brief, presents the following explanation of the foundation for its counterclaim:

> Although Bishop Hill claimed a Section 1603 payment that included approximately $17 million attributable to the [$60,000,000] Development Fee, it sued for approximately $12.7 million, recognizing that Treasury's award included an amount that accounted for some, but not all of the amount of the Development Fee that Bishop Hill included in its claimed [cost] basis.  Other filings by both parties reflect this understanding as well.  Further, the counterclaim clearly alleges that $4,380,039 was attributable to the Development Fee.

Def.'s Reply at 6.  To put it simply, according to the government's proposed counterclaim plaintiffs received not the $17 million attributable to a $60,000,000 development fee that they requested, but only $4,380,039; yet even this $4,380,039 was not allowable and should be repaid to the United States.

The court now considers whether the government's varying explanations for the payment to plaintiffs of $117,216,098 destroy the plausibility of its overpayment counterclaim. Plaintiffs appear to argue that the "no development fee, but rather a five percent mark-up" explanation provided in discovery fundamentally contradicts the explanation currently provided by the government that a reduced development fee *was* included in the government's grant award calculations, but should now be eliminated. Pls.' Opp. at 4-5. The court, however, does not view the differences in these explanations as particularly significant. Plaintiffs' argument in this regard does not establish that the government's factual allegations are *fundamentally* contradictory, and fails to establish that the government's counterclaim is not plausible.

As a threshold matter, the court notes that there is no fatal variance between the phrasing of: (1) "a reduced portion of the development fee," Def.'s Mot. at 2; (2) an amount "attributable to the inclusion of a reduced Development Fee," Proposed Counterclaim ¶ 6; and, (3) "a reduction of Plaintiff's claimed eligible basis by the amount of the development fee included in Plaintiff's total cost basis, and subsequent addition of a mark-up equal to five percent of Plaintiff's claimed qualified direct costs," Pls.' Opp. Ex. A at 3-4. Each of these phrasings explains that Treasury did not accept the full claimed amount of plaintiffs' $60,000,000 development fee and instead substituted a lower amount in its calculations of the cost basis of plaintiffs' wind power facility. Although the explanations given by the government contain somewhat conflicting narratives of cost basis calculations, the court finds no obvious contradiction that would call into question the foundation of Treasury's Section 1603 payment to plaintiffs.

Having considered the parties' arguments, the court sees no fundamental contradiction between Treasury *significantly reducing* a claimed development fee, on the one hand, and Treasury *replacing* a disregarded development fee amount with a lesser amount that better approximates the fair market value of development services, on the other hand. The end result is a reduction in cost basis attributable to a claimed development fee, even if the description of that reduction has varied over time. Most importantly, as the government argues, the legal issue before the court is not a review of Treasury's methodology for calculating plaintiffs' Section 1603 payment, but a determination of the proper grant award for plaintiffs' wind power facility. Def.'s Reply at 6. The resolution of that legal issue might support either plaintiffs' claim or the government's counterclaim, both of which are

plausible at this stage of the litigation of this case.

For all of these reasons, the court does not find that the government's proposed counterclaim is futile. It is not "barred by the Government's prior sworn statements," as alleged by plaintiffs. Pls.' Opp. at 5. The court turns now to plaintiffs' contention that the government's proposed counterclaim is not plausible under *Twombly*.

### B.      Plausible Counterclaim under *Twombly*

Plaintiffs argue that the government's proposed counterclaim is either facially implausible or insufficiently developed factually. Pls.' Opp. at 5-7. In plaintiffs' view, the development fee included in their Section 1603 application, valued at approximately $60,000,000, Def.'s Br. of May 7, 2015, Ex. F at 2, could not be excluded, in its entirety, from the qualified cost basis of their wind power facility. *See* Pls.' Opp. at 7 ("[N]o factual allegations in the Government's proposed counterclaim support the theory that Bishop Hill's development fee does not form part of the cost basis of grant eligible property."). Plaintiffs assert, in particular, that the government's proposed counterclaim neither alleges that the development services acquired by plaintiffs had zero value, nor alleges that the $4,380,039 attributed by Treasury to development services for plaintiffs' facility exceeded thirty percent of the fair market value of such development services. *Id.* at 6-7. According to plaintiffs, the government's proposed counterclaim therefore cannot be considered to be plausible because "it has not alleged sufficient facts to state a plausible claim." *Id.* at 7.

Defendant counters these arguments, first, by noting that the court should not attempt to decide the merits of the government's proposed counterclaim at the pleadings stage. Def.'s Reply at 2-3 (citing cases). The court agrees. Nothing in *Twombly* suggests that its plausibility test requires a decision on the merits of a claim. Instead, the proposed counterclaim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The counterclaim before the court asserts that Treasury overpaid plaintiffs by according some value to the $60,000,000 development fee when calculating plaintiffs' Section 1603 payment:

> [T]he defendant has received documents in discovery

providing important details about the plaintiffs'
organizational structure at various points in time, the tax
equity investment in plaintiff Bishop Hill, and the
development fee that Bishop Hill included in its claimed
cost basis.  Based on that information, defendant
determined that a factual basis exists to assert that
Bishop Hill's development fee was a sham transaction,
or otherwise did not constitute an eligible cost under
§ 1603.  As a result, the defendant now believes that no
portion of the development fee can be included in the
eligible cost basis of Bishop Hill's wind energy facility,
and that the portion that Treasury previously allowed
was an overpayment to which Bishop Hill was not
entitled.

Def.'s Mot. at 5.

In sum, defendant contends that "Bishop Hill was not entitled to include any
portion of the Development Fee in its claimed eligible basis." Def.'s Reply at 1;
*see also* Proposed Counterclaim ¶ 7 ("The Development Fee was a sham
transaction, or was otherwise not an eligible cost under § 1603.").  The proposed
counterclaim proffers a number of facts relevant to plaintiffs' corporate
relationships which allegedly prevented the development fee agreement for the
payment of $60,000,000 from qualifying as "a bona fide agreement with a
legitimate business purpose." Proposed Counterclaim ¶ 16.  Thus, according to
the proposed counterclaim, Treasury should not have attributed any cost basis to
the $60,000,000 development fee included by plaintiffs in their Section 1603
application, and plaintiffs now owe the United States $4,380,039. *Id.* ¶¶ 26-28.

The court must agree with defendant that its proposed counterclaim is
plausible under *Twombly*.  Indeed, the level of factual detail in the counterclaim is
as specific, if not more specific, than that provided by plaintiffs in their complaint.
The merits of both plaintiffs' claim and the government's counterclaim must be
resolved, not at the pleadings stage, but once the parties' legal claims are fully
explored through discovery and presented thereafter for the court's review.

**CONCLUSION**

8

For the foregoing reasons, defendant's motion is granted.  Plaintiffs suggest that in the event the court permits the government's counterclaim, additional discovery relevant to the government's counterclaim must be scheduled by the court.  Pls.' Opp. at 7-8.  In response, the government contends that the existing discovery schedule encompasses discovery relevant to plaintiffs' claim as well as the government's counterclaim and that fact discovery remains open for both parties until July 22, 2016.  Defendant also asserts that it has been responsive to plaintiffs' discovery requests (for example, the United States points to the three government employees requested for deposition by plaintiffs it has now made available).  Plaintiffs do not specify additional discovery that they are being denied by defendant and the court takes this opportunity to express its expectation that both parties will be able to engage in such sufficient and reasonable discovery as necessary to litigate their claims.  In the event the July 22, 2016 deadline is inadequate for the parties to complete fact discovery, counsel should arrive at a mutually agreeable extension proposal in that regard.  The court encourages the parties to cooperate in completing discovery so that this case may proceed efficiently without the need for intervention by the court.

Accordingly, it is hereby **ORDERED** that

(1)    Defendant's Motion for Leave to Amend Answer to Bring Counterclaim, filed April 5, 2016, is **GRANTED**;

(2)    Defendant shall **FILE under seal** its **Amended Answer**, including its **Counterclaim**, and also **FILE** a **redacted** public version of its **Amended Answer** and **Counterclaim**, on or before **June 16, 2016**[3];

(3)    Pursuant to the court's order of June 2, 2016, the parties shall **FILE** a **Joint Status Report**, on or before **June 27, 2016**, apprising the court of the status of fact discovery and proposing a schedule for expert

---

[3]/  Pursuant to Paragraph 9 of the Protective Order entered October 17, 2014 in this case, leave of the court is required to file documents under seal.  To clarify the procedure for filing documents under seal as this case proceeds, the court will accept the simultaneous submission of: (1) a motion for leave to file under seal, which should always state whether such motion is unopposed; and, (2) the sealed filing as a separate docket entry.

discovery that reflects the parties' consensus on an appropriate schedule; and,

(4)    Pursuant to the court's order of June 2, 2016, defendant shall **FILE** any **Revised Motion to Compel Response to Subpoena to Invenergy Investment Company, LLC**, on or before **June 29, 2016**.


/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge