# In the United States Court of Federal Claims

No. 14-251 C
(Filed December 20, 2016)
**UNPUBLISHED**

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| BISHOP HILL ENERGY LLC * | |
| and INVENERGY WIND LLC, * | Motion to Compel Responses to |
| * | Interrogatories; Motion to Quash |
| *Plaintiffs,* * | RCFC 30(b)(6) Deposition Topics; |
| * | Expert Discovery Appropriate to |
| v. * | Explore Government's Contentions |
| * | of Fact and Law Regarding Fair |
| THE UNITED STATES, * | Market Value of Wind Energy |
| * | Facility Development Fee. |
| *Defendant.* * | |

* * * * * * * * * * * * * * * * * * * *

*John C. Hayes, Jr.*, Washington, DC, for plaintiffs. *Alycia A. Ziarno*, *Brian P. Donnelly* and *Brian J. Whittaker*, Washington, DC, of counsel.

*Miranda Bureau*, United States Department of Justice Tax Division, with whom were *Caroline D. Ciraolo*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, *G. Robson Stewart*, Assistant Chief, *S. Starling Marshall*, *Blaine G. Saito* and *Jennifer McCollough*, Trial Attorneys, Washington, DC, for defendant.

———————————

**OPINION**

———————————

**Bush**, *Senior Judge*.

The court has before it Plaintiffs' Motion to Compel Discovery Responses, filed July 21, 2016, as well as Defendant's Motion for a Protective Order Quashing Bishop Hill Energy LLC's Notice of RCFC 30(b)(6) Deposition, filed

September 14, 2016. Oral argument on the motions was held on November 29, 2016. During the briefing of plaintiffs' motion the parties were able to resolve some of their disputes, and just before oral argument the government supplemented its response to two of plaintiffs' contention interrogatories. Thus, in the court's view, the outstanding controversy for plaintiffs' motion concerns five of the government's responses to plaintiffs' contention interrogatories. According to plaintiffs' reply brief, plaintiffs seek "an order compelling Defendant to provide timely amendments to its responses to Invenergy's contention interrogatories." Pls.' Reply at 10.

As for defendant's motion, at issue are two deposition topics noticed by plaintiffs for the deposition of the government's Rule 30(b)(6) witness. These deposition topics largely track the topics of the five contention interrogatories that are the subject of the remaining dispute addressed by plaintiffs' motion. The court therefore resolves both motions in a single opinion. Plaintiffs' motion requesting amended responses to the disputed contention interrogatories is denied, and the government's motion to quash two Rule 30(b)(6) deposition topics is granted, for the reasons stated below.

## I. Contention Interrogatories in General

The court need not dwell overlong on the caselaw cited by the parties which states and restates various perspectives regarding the appropriateness and timing of contention interrogatories. Much of the caselaw cited by plaintiffs, *see id.* at 6-7, is focused specifically on patent litigation discovery, a type of discovery not at issue in this case. The government, for its part, relies on a number of cases that are not binding on this court, and which are not sufficiently analogous to this case to provide much useful guidance. *See* Def.'s Opp. at 7-8, 14-15. Defendant does cite to one case, however, which has a great number of parallels to the current dispute, and which evinces a well-reasoned analysis of the proper use and timing of contention interrogatories in circumstances similar to those present in this case. *Id.* at 16. The case cited by defendant, *BB & T Corp. v. United States*, 233 F.R.D. 447 (M.D.N.C. 2006), provides a persuasive analysis that guides this court in resolving the parties' discovery dispute. The court notes, too, that it enjoys wide discretion in resolving discovery disputes and scheduling discovery so that cases before it may proceed justly and efficiently. *See, e.g., Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc) ("A trial court 'has wide discretion in

setting the limits of discovery.'" (quoting *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991))).

*BB & T* provides an explanation of the use of contention interrogatories:

> [When a] plaintiff seeks to discover [a] defendant's factual and legal bases for its defense[,] [t]his type of discovery is termed "contention discovery" and is usually conducted by serving "contention interrogatories" as opposed to taking a deposition of a party or its attorneys.

233 F.R.D. at 447. It is important to note that in *BB & T*, the contention discovery targeted the government's rejection of certain deductions on the plaintiff's tax return. *Id.* Similarly, in this case, plaintiffs' contention discovery targets Treasury's rejection of the amount of plaintiffs' claimed cost basis for a wind power facility, an amount which is determinative of the size of a grant award by Treasury to plaintiffs. *See* Pls.' Reply at 7 (noting that plaintiffs' contention discovery focuses on the "central issue to Plaintiffs' claim," *i.e.*, "the very justification given by Treasury for reducing Bishop Hill's grant award"). Thus, the contention discovery disputes in *BB & T* and in this case are quite similar in focus.[1]

The basic framework of the contention discovery dispute in *BB & T* involved both contention interrogatories and contention depositions, as does the litigation in the present case and its companion case, *California Ridge Wind Energy LLC v. United States*, No. 14-250C. Just as in this case and *California Ridge*, the plaintiff in *BB & T* began with contention interrogatories and later turned to contention depositions when the contention interrogatories were not fruitful:

> Plaintiff did first attempt to use contention interrogatories. Seven months [before noticing

---

[1]/ The taxpayer in *BB & T* also engaged in complicated business transactions, 233 F.R.D. at 448, analogous to the complex business transactions that underlie the wind power facility investments of plaintiffs.

> contention depositions], BB & T served eleven interrogatories seeking contention information. It complains that the response by the United States fails to identify any relevant facts and provides only a superficial discussion of the United States' legal basis for its defense. . . . The Court agrees that th[e] answer given by the United States is rather cursory.

233 F.R.D. at 448-49. In the subject matter, plaintiffs have similar complaints regarding the government's responses to their contention interrogatories. *See* Pls.' Mot. at 16-19.

Although the *BB & T* court agreed with the plaintiff that the government's response to the contention interrogatories was "rather cursory and unhelpful," the court nonetheless quashed the contention depositions sought by the plaintiff. *Id.* at 449. The court offered several reasons why the plaintiff would be denied contention discovery at that stage of the litigation. Of most interest here, the timing of the contention discovery was held to be premature. The following excerpts of the court's decision explain that ruling:

> A third reason for granting the protective order [in favor of the government] concerns the element of timing. And, the timing issue implicates the much larger and more general issue of whether contention discovery should be allowed at all. Contention discovery, whether in the form of contention interrogatories or contention depositions, can be disruptive mainly because the very nature of such questions will normally require the help of an attorney to assist the client in providing answers. This type of discovery can add considerable expense to any lawsuit. In addition to the extra cost, when lawyers craft responses they will necessarily do so in a way that most minimizes jeopardy to their client and, therefore, contention discovery may yield little additional useful information. Consequently, when the facts, evidence, and law are relatively straightforward such as in a simple traffic accident case, the need for contention discovery

may be outweighed by the burdens of contention interrogatories, much less contention depositions of attorneys. On the other hand, when a case involves complicated technical issues such as may arise in patent litigation, contention interrogatories may be useful.

The instant case lies somewhere between the two. The necessity for contention interrogatories seemingly arises in government litigation because the government is often making policy through an enforcement action and not just relying on past decisions. Thus, in the instant case, plaintiff perceives that the government, for policy reasons, altered its position when it decided to go after [complex business transactions] such as plaintiff's. From plaintiff BB & T's viewpoint, the government's defense seems like a moving target and it would like to have the government commit itself to a particular position and explain its reasons.

With this last proposition, the government does not disagree, but argues that the real issue concerns the appropriate time and manner for such revelations. The government asserts that it has been busy during discovery trying to learn facts and until it has a sufficient, comprehensive view of the facts, it will not be able to provide a final opinion concerning its contentions. It continues that its earlier answers to the contention interrogatories at least provided the broad outlines of its defense. However, the Fed. R. Civ. P. 26(a)(2) report of its expert witness to be served on February 15, 2006 will allegedly contain a complete statement of the expert's opinion concerning the defense, the basis and reasons for that opinion, and the data and information on which the expert relied. At that time, defendant contends BB & T will have full knowledge of the facts and legal theory of the government's defense.

> The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery. Even in a case not involving expert witnesses, contention interrogatories should normally be conducted at the end of discovery. Thus, an additional reason to quash the deposition[] notices is that they are premature.
>
> The final reason for quashing the "contention depositions" is that it is not clear that they are necessary. A court may be well advised to examine whether contention discovery is truly necessary in any particular case. As the United States points out, contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the benefit. In the ordinary case, the complaint, answer, disclosures, and discovery will provide sufficient information about a party's position until such time as the filing of the dispositive motions or trial briefs. In other cases, contention discovery may be necessary to avoid surprises at trial. Courts may wish to confine contention discovery to those cases where there is a compelling, specific need for the information prior to the filing of dispositive motions in order to keep litigation costs down.

*Id.* at 449-451 (footnote and citations omitted).

     Given the parallels between the discovery dispute in *BB & T* and the discovery dispute in this case and its companion case *California Ridge*, the court views the analysis of the discovery scheduling dispute in *BB & T*, particularly as to the timing of contention discovery, to be persuasive. The court also agrees with

the *BB & T* court's general preference for contention interrogatories, rather than contention depositions. *See* 233 F.R.D. at 449 ("[U]ntil a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery."). The court turns now to the contention discovery requested by plaintiffs in this case.

## II. Plaintiffs' Contention Interrogatories

The five contention interrogatories for which defendant's responses are still in dispute in this case are as follows:

> **Interrogatory 1**: Do you contend that the development fee of $60,000,000 included as part of the cost basis in the Bishop Hill Application exceeded open market expectations for projects of the size of Bishop Hill and in the location of Bishop Hill?
>
> **Interrogatory 2**: If the answer to the foregoing interrogatory is yes, set forth all facts which you contend support that contention.
>
> **Interrogatory 15**: Do you contend that the amount of the development fees included in the cost basis of other wind energy facilities similar in size to Bishop Hill's and placed in service around the same time as Bishop Hill's are not relevant to a determination of the fair market value of the development fee included in the claimed qualified cost basis of the Bishop Hill facility?
>
> **Interrogatory 16**: If the answer to interrogatory number 15 is yes, set forth all facts upon which you rely to support that contention.
>
> **Interrogatory 17**: If the answer to interrogatory 15 is that the amount of the development fees included in the cost basis of other wind energy facilities similar in size to Bishop Hill's and placed in service around the same

>    time as Bishop Hill's are relevant, identify each and
>    every one of those wind energy projects.

Pls.' Mot. at 5-6.  Broadly, these contention interrogatories seek defendant's position on the fair market value of the development fee paid by Bishop Hill Energy LLC (Bishop Hill), the relevance of the development fees paid by other wind power facility developers for determining the fair market value of Bishop Hill's development fee, and the identification of wind power projects that would be relevant for making a comparative analysis to determine the fair market value of Bishop Hill's development fee.  The court agrees with plaintiffs that defendant has not responded, substantively, to these contention interrogatories.

     Defendant argues that these contention interrogatories are premature, and that the government should not be compelled to respond with information which would be more appropriately disclosed during expert discovery.  According to the government's opposition brief:

>    Defendant's objection states that if it does submit
>    evidence regarding the fair market value of the purported
>    development fee in its defense, it will do so through an
>    expert.  Because expert reports have not been exchanged
>    yet, Plaintiffs' request for such information is premature.
>
>    For example, Interrogatory No. 15 asks whether
>    Defendant contends that certain factors are not relevant
>    to a determination of the fair market value of Bishop
>    Hill's development fee.  But the relevant factors in
>    determining fair market value are, necessarily, part of an
>    expert's approach to valuation.  For example, an expert
>    may determine that the amount of development fees
>    included in the cost basis of wind energy facilities
>    similar in size to Bishop Hill's are relevant to the fair
>    market value of the development fee included in the
>    claimed qualified cost basis of the Bishop Hill facility,
>    or, he or she may not consider that information relevant
>    at all.

> . . . .
>
> Defendant also objected to interrogatories 2, 16, and 17, which seek the identification of facts or projects underlying the responses to Interrogatories 1 and 15, as calling for the disclosure of expert work product and/or expert discovery prior to the deadlines for providing such discovery. Because the questions posed by interrogatories 2, 16, and 17 refer to facts that may underlie potential arguments that Defendant *may* make based on an expert opinion, they also fall within the realm of expert discovery, and cannot be answered absent expert opinion. And if an expert chose to analyze certain wind projects in the context of his or her expert report, the identity of those projects would be revealed in the report.

Def.'s Opp. at 15-16. The court agrees with defendant that these particular contention interrogatories contain requests for information that is more appropriately obtained during expert discovery. The government's disclosure of its expert report, should this case proceed to expert discovery, is the appropriate time for plaintiffs to obtain the information they seek in these five contention interrogatories.

Plaintiffs offer a number of unpersuasive arguments contending that plaintiffs are entitled to contention discovery now, not later in this litigation. The court examines the most substantive of those arguments here.[2] First, plaintiffs suggest that their contention interrogatories are not early, or premature, according to caselaw which has resolved analogous disputes over the timing of contention discovery. Pls.' Reply at 6-8. To the extent that the cases cited by plaintiffs address the specific circumstances of contention discovery in patent litigation, those cases are inapposite. None of plaintiffs' cases are more on point than *BB & T*; the court views *BB & T* as the most persuasive authority for the resolution of the parties' dispute over contention discovery.

---

[2]/ The court has considered each of plaintiffs' arguments, and finds them insufficient to invalidate the sound approach taken by the court in *BB & T*.

Next, plaintiffs assert that contention discovery is essential before the parties complete depositions during the fact discovery period. Pls.' Reply at 8-9. To the extent that defendant's deposition witnesses will provide testimony of their personal knowledge of the contemporaneous review of Bishop Hill's development fee, that is a narrower topic than any of the five interrogatories at issue in plaintiffs' motion. *See* Oral Argument Recording, at 2:21-24 PM (plaintiffs' counsel noting that Interrogatory #1 asks for the government's *current* contentions regarding plaintiffs' development fee). To the extent that plaintiffs seek foundational information to support certain topics in their Rule 30(b)(6) deposition, those contention deposition topics will be addressed in the next section of this opinion. The court sees no need for substantive responses to these five contention interrogatories before any fact witness depositions are taken in this case.

### III.   The Contention Deposition Dispute

The disputed topics for the deposition of the government's Rule 30(b)(6) witness are:

> 2. Defendant's contentions about whether the amount of development fees included in the cost bases of other wind energy facilities similar in size to Bishop Hill's and California Ridge's and placed in service around the same time as Bishop Hill's and California Ridge's are relevant to a determination of the fair market values of the development fees included in the claimed qualified bases of the Bishop Hill and California Ridge facilities, and the factual bases of those contentions.
>
> 6. Treasury's factual knowledge of open market expectations for projects of the sizes and in the locations of Bishop Hill and California Ridge placed in service between January 1, 2011 and December 31, 2012, including Treasury's knowledge of any such particular projects and the development fees paid by those projects.

Def.'s Mot. Ex. A, at 2. The court notes that these two deposition topics overlap

with the interrogatories discussed earlier in this opinion, and which are discussed in the opinion filed today in *California Ridge*. Plaintiffs seek information, through a contention deposition, regarding the relevance of the development fees paid by other wind power facility developers for determining the fair market value of Bishop Hill's development fee and California Ridge's development fee. They also seek information regarding other wind power projects and the development fees paid to develop those wind power plants. Contention deposition topics #2 and #6 are, to a great extent, Interrogatories #15, #16, and #17, rephrased. *See* Oral Argument Recording, at 2:35-36 PM (plaintiffs' counsel noting that the issues addressed in the contested deposition topics and the contested interrogatories are the same).

Defendant resists addressing these two deposition topics just as the government resists substantively answering the five disputed contention interrogatories at this time. Defendant argues, most importantly, that the contention discovery sought in this fashion is premature, in that it is more appropriately reserved for expert discovery. Def.'s Mot. at 7. The government also notes that it is impractical and inefficient to prepare a witness for topics that would be better answered through contention interrogatories. *Id.* Finally, defendant argues that deposition topic #6 requests information that, according to a prior ruling of this court, is overly burdensome to produce during fact discovery. *Id.* at 9-10.

The court agrees with defendant that, as a general rule, a contention deposition is disfavored when a contention interrogatory would suffice. *See BB & T*, 233 F.R.D. at 449. Plaintiffs' counsel, in effect, conceded the point at oral argument. *See* Oral Argument Recording, at 2:35-36, 3:03 PM (plaintiffs' counsel noting that his preference would be for contention interrogatories over contention depositions, and acknowledging that contention interrogatories are more suitable for this type of discovery); *see also* Pls.' Opp. at 1, 4-5, 11-12 (noting that plaintiffs' disputed Rule 30(b)(6) deposition topics were noticed for the purpose of obtaining substantive answers that were not provided in the government's responses to plaintiffs' contention interrogatories). The court also agrees with defendant that these two contention deposition topics are premature, because they touch on information that will be encompassed in the expert discovery contemplated by the parties, if this case proceeds to expert discovery. The court again relies on *BB & T* for its guidance as to the premature nature of contention

discovery when expert testimony on that same topic is the most efficient means for presenting a party's contentions of fact and law. *BB & T*, 233 F.R.D. at 450.

Finally, the court agrees with defendant that a general screening of government data concerning other wind projects and their development fees, along with an analysis of open market expectations in that regard, is either irrelevant and burdensome, or a topic for expert discovery. It is not *per se* "discoverable," Pls.' Opp. at 12, because the burden of producing such information and obliging government counsel to educate its Rule 30(b)(6) witness in that regard, especially in light of the dubious relevance of this information, is too great. *See* Order of Dec. 21, 2015, at 12.

Plaintiffs also allege that they will be handicapped in expert discovery if their proposed contention discovery is not completed during the fact discovery period. Pls.' Opp. at 12. The essence of their argument is two-fold. According to plaintiffs, their expert will be forced to construct an opinion without the benefit of all of the data that the government's expert will be able to access. In addition, plaintiffs allege that the government will be free to "cherry pick" the data it presents to both its own expert and to plaintiffs' expert. As the court has previously stated, however, expert discovery allows a party access to the data underlying its opponent's expert opinions. Order of Dec. 21, 2015, at 12. To the extent that plaintiffs predict that the government will unfairly manipulate expert discovery to its advantage, that is a speculative concern with no basis in fact. *See* Oral Argument Recording, at 2:53-54 PM (defendant's counsel stating that she has no intention of cherry picking data to influence expert opinion). The court expects both parties to collaborate in discovery in full accordance with the letter and the spirit of the court's rules.

## IV. Conclusion

For the foregoing reasons, plaintiffs' request that defendant substantively respond to its five contention interrogatories at this point in the litigation must be rejected as premature. Further, for the reasons discussed in this opinion, the government's Rule 30(b)(6) witness shall not be required to respond to proposed topics #2 and #6. Finally, the court notes that expert discovery in this case is contingent upon plaintiffs' claim surviving summary judgment proceedings.

Accordingly, it is hereby **ORDERED** that

(1) Plaintiffs' Motion to Compel Discovery Responses, filed July 21, 2016, is **DENIED**; and

(2) Defendant's Motion for a Protective Order Quashing Bishop Hill Energy LLC's Notice of RCFC 30(b)(6) Deposition, filed September 14, 2016, is **GRANTED**.

/s/Lynn J. Bush  
LYNN J. BUSH  
Senior Judge