# United States Court of Federal Claims

No. 14-251 C
(Filed Under Seal: December 29, 2017)
(Reissued: January 16, 2018)<sup>*</sup>

_____

**BISHOP HILL ENERGY LLC, et al.**

      *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**

      *Defendant.*

_____

Motion for Summary Judgment; Renewable Energy Facilities; Department of Treasury Section 1603 Grants; Internal Revenue Code of 1986, Section 48; The American Recovery and Reimbursement Tax Act of 2009

    *John Carney Hayes, Jr., Esquire,* Nixon Peabody LLP, Washington, D.C., for plaintiffs.

    *Miranda Bureau, Esquire*, U.S. Department of Justice, Tax Division (G), Washington, D.C., for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge.*

    This case raises questions regarding the application of a program included as a part of an economic stimulus package enacted by Congress in the wake of the 2009 recession in this country. The program offered cash rebates in lieu of investment credits for qualifying "renewable energy facilities" and is referred to generally herein as Section 1603 cash rebates or cash grants.

    Several disputed matters have arisen between the Department of the Treasury and energy companies that have attempted to qualify for the Section 1603 grants. These problems have arisen not only from issues of statutory interpretation but also because of Treasury efforts to explain the law and advise applicants how to qualify for the grants. *See e.g.*, *Alta Wind I Owner-Lessor C v. United States*, 128 Fed Cl. 702 (2016); *LCM Energy Solutions v. United States*, 128 Fed. Cl. 728 (2016).

---

<sup>*</sup> We issued this Opinion under seal on December 29, 2017, and invited counsel to propose redactions prior to its publication. No redactions were proposed by the parties. The December 29 Opinion is hereby reissued for publication, unsealed.

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

The issues here center on the meaning of "development costs" and whether such costs qualify as a part of "basis" as defined by tax law. More specifically, the following questions pertain: (1) whether the development fee in this case is an eligible cost and therefore a proper element of "basis" given the facts of this case; (2) whether the development fee was a paid cost or merely "circled cash" as defendant claims; and (3) whether the development agreement was a "sham transaction" between subsidiaries of the same entity.

The first question—whether the development fee was an eligible cost given the facts of this case—is a controlling one because the other two questions may depend on a ruling on the first. Moreover, this case differs in that plaintiffs treated their development fees as a stand-in for markup or profit that might be realized upon sale of the project, rather than a series of expenses that can be itemized and supported by receipts. Such an accounting does not seem correct intuitively as considered by a layperson, yet uncertainties have arisen at this stage of proceedings whether a developer is entitled to add markup or premium to its basis for purposes of section 1603 rebates.

Given such uncertainties surrounding plaintiffs' use of development costs as a part of basis as the term is used in tax statutes, and the fact that such arrangements are to be viewed by the courts on a case-by-case basis, we cannot conclude that this case is free of genuine issues of material fact that prevent a ruling on summary judgment. Defendant's motion for summary judgment is therefore denied.

## BACKGROUND

Congress enacted The American Recovery and Reimbursement Tax Act of 2009 to stimulate an economy that was experiencing a severe recession at the time. The purpose of the Act was to make "supplemental appropriations for job preservation and creation, infrastructure investment, energy efficiency and science, assistance to the unemployed, and State and local fiscal stabilization." Pub. L. 111-5, Div. B, tit. I § 1603, 123 Stat. 115 (as amended by Pub. L. 111-312, tit. VII, § 707, 124 Stat. 3296, 3312).

One part of the statute was Section 1603, which created a system whereby an owner of "specified energy property" became entitled to a grant or rebate equal to 30% of "the basis of such property." The meaning of basis became important because the owner would want to include in that category the highest amounts possible as that was the total used to calculate the 30% grant. The Department of Treasury wanted to use the lowest possible amounts to calculate grants.

Plaintiffs Bishop Hill Energy LLC and Invenergy Wind LLC began constructing a wind facility at a cost of $433,077,031 in November 2010. The wind facility was placed into service in February 2012. Subsequently, plaintiffs applied for a Section 1603 grant payment of $129,923,109 from the Treasury. This was thirty percent of the wind facility's cost basis. The Treasury awarded plaintiffs a reduced amount of $117,216,098.

Plaintiffs filed a Complaint alleging that Treasury violated Section 1603 of the American Recovery and Reinvestment Act, and demanded $12,707,011 in damages. The $12 million figure represented the difference between the amount to which plaintiffs thought themselves entitled and the amount of the grant that plaintiffs received from Treasury. Defendant filed motions for summary judgment on plaintiffs' claim and on its counterclaim for $4,380,039. We deny those motions by this Order and encourage the parties to submit a pre-trial schedule leading to trial no later than June of 2018.

## ARGUMENTS

Plaintiffs stated that "Section 1603 created a temporary program under which those qualifying for investment tax credits under Section 48 of the Internal Revenue Code of 1986 could instead receive immediate cash grants." Plaintiffs developed a wind facility at a cost of $433,077,031 and submitted an application to the United States Department of Treasury to offset that construction expense.

Defendant filed an Answer in May 2014 admitting that it had awarded a Section 1603 cash payment in the amount of $117,216,098 to plaintiffs but denied that the Government violated Section 1603. Also, it contended that a recovery by plaintiffs should be reduced by set-off against any federal income tax credits that might apply.

Defendant filed a Motion for Summary Judgment in March 2017, claiming that plaintiffs "cannot meet their burden to show that any of this purported development fee could properly be included in their cost basis . . . ." Defendant's reasons for this assertion are that (1) the 'development fee' was based on a calculation of the amount plaintiffs thought it could realize in a sale of the property, not an amount that it paid as fees for services; (2) bank records reveal a "circular cash transaction" in which plaintiffs paid the development fees into a developer's account, then on the same day the payee returned the same amount to plaintiffs' account; and (3) defendant believes this transaction to be "an effort to boost the Section 1603 payment by inflating the claimed qualified cost basis of the eligible property."

Defendant's counterclaim is a request for the portion of Treasury's payment to plaintiffs that is attributable to the development fee, which was an overpayment to which it was not entitled. This amount is alleged by defendant to be $4,380,039.

Plaintiffs filed a Response to Defendant's Motion for Summary Judgment arguing that the Government has not shown that the development agreement was a "sham transaction" and that the record contains sufficient facts to support a conclusion that the development agreement had a business purpose. Plaintiffs assert that facts in the record confirm that the development agreement had economic substance and whether Invenergy and Firstar intended to form a partnership is a question of material fact.

Defendant's Reply in Response summarized its argument as follows: "[i]n reality, plaintiffs' 'development fee' was nothing more than a papered up development

agreement and a circular financial transaction in which $60 million made a round trip through three Invenergy bank accounts. Plaintiffs argue they should keep that money, and receive more, not because they actually incurred a development fee, but because they want to add a 'markup' to Bishop Hill's cost basis."

Yet, the record contains suggestions that a markup or premium or profit may be appropriate in certain circumstances when considering total costs. These contentions of the parties comprise the crux of the case at this point. The level of certainty that we need to rule that no genuine issues of material fact exist of record is not so far available to the court; we cannot resolve this case on summary judgment at this time.

Defendant's Motion for Summary Judgment is DENIED for the reasons stated. All other motions are DENIED as moot. The parties will meet within ten days to agree on a pre-trial schedule and submit the schedule to the court in the form of a joint motion that may be filed by either party on behalf of both. Counsel may, but are not required to request a hearing to discuss the matters covered by this Order if necessary to sharpen the issues for trial, or for any other purpose.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge